NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JAMIE Q., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., E.Q., *Appellees.*

No. 1 CA-JV 19-0053
FILED 9-26-2019

Appeal from the Superior Court in Maricopa County
No. JD12444
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Zwillinger
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge David D. Weinzweig joined.

---

**T H U M M A**, Judge:

¶1        Mother Jamie Q. appeals the superior court's order terminating her parental relationship with her two children. Because she has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Stephen S. (Father) have an extensive history of substance abuse, particularly with methamphetamine.[1] In July 2016, Mother gave birth to a substance-exposed newborn, A.S. The Department of Child Safety (DCS) then provided the parents with in-home family preservation services. When both parents continued using methamphetamine and engaged in domestic violence, and Mother disclosed untreated depression and bipolar disorders, DCS took custody of A.S. in October 2016 and filed a dependency petition.

¶3        The court found A.S. dependent in December 2016 and adopted a case plan of family reunification, concurrent with severance and adoption. DCS provided Mother with services, including substance-abuse testing and treatment, a psychological evaluation and a parent aide with visitation. Mother completed a psychological evaluation with Dr. Al Silberman in January 2017. Dr. Silberman diagnosed Mother with moderate to severe alcohol use, moderate methamphetamine use, major depression and a personality disorder with antisocial and dependent features. Although telling Dr. Silberman that she had not used methamphetamine for two months, Mother tested positive for methamphetamine about a week before the evaluation. Dr. Silberman gave Mother a very poor prognosis of being able to safely parent A.S. in the future. He recommended that Mother remain sober for at least a year and become financially stable. He also

---

[1] Father's parental rights also were terminated, his appeal of that order was dismissed pursuant to Arizona Rule of Juvenile Procedure 106(G)(1) and he is not a party to this case.

recommended Mother participate in regular drug testing and bi-monthly counseling with a master's-level therapist.

**¶4**　　　Between August 2016 and June 2017, Mother inconsistently participated in drug testing and, when she did test, periodically tested positive for amphetamine or methamphetamine. In July 2017, she completed a 28-day inpatient substance-abuse program at Maverick House. After completing the program, Mother consistently participated in drug testing for a time and tested negative through August 2017. Her participation became sporadic in the months that followed, however, and she tested positive for methamphetamine in October 2017.

**¶5**　　　In early 2018, after Mother was arrested for driving under the influence, she disclosed ongoing domestic violence with Father and was not treating her behavioral health issues. When E.Q. was born in February 2018, Mother tested positive for methamphetamine and other controlled substances. DCS took custody of E.Q. and filed a dependency petition. In March 2018, the court found E.Q. dependent and adopted a case plan of family reunification, concurrent with severance and adoption.

**¶6**　　　In March, April and early May 2018, Mother regularly participated in drug testing and tested negative. During this same time, Mother completed Families F.I.R.S.T. intensive outpatient substance-abuse program. Mother's commitment to drug testing then waned, and she missed several tests. In June 2018, she tested positive for methamphetamine, and an early August 2018 hair sample also was positive for the drug. Mother then failed to participate in drug testing through February 2019. Nor did she follow through with any further substance-abuse treatment. DCS referred Mother for a second psychological evaluation, but she failed to complete it.

**¶7**        In October 2018, the court changed the case plan to severance and adoption. DCS filed a motion to terminate alleging substance-abuse for both children and 15-months time-in-care for A.S., also alleging that termination was in the best interests of the children After a two-day severance adjudication in February 2019, the court granted the motion on the grounds alleged. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section, 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-120.21(A) and 12-2101(A) and Ariz. R.P. Juv. Ct. 103-104 (2019).[2]

## DISCUSSION

**¶8**        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8–533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 288 ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted).

**¶9**        On appeal, Mother argues that the superior court erred in finding that DCS made diligent efforts to provide her with appropriate reunification services because DCS did not offer her master's-level counseling or domestic-violence counseling.

**¶10**        DCS must make diligent efforts to provide appropriate reunification services when it seeks to terminate parental rights on the grounds relevant here. A.R.S. § 8-533(B)(8); *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453 ¶ 12 (App. 2005). DCS satisfies this requirement if it provides the parent with "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS is required to provide only those services with a reasonable prospect of success but need not provide every conceivable service or ensure the parent participates in each service it offers. *Id.; Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192 ¶37 (App. 1999). DCS is not required to leave "the

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

window of opportunity for remediation open indefinitely." *Maricopa Cty. Juvenile Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994).

¶11 DCS argues that Mother waived her claim regarding services because she did not raise the issue until the termination hearing. The superior court found that "[i]t was incumbent upon Mother to raise this issue with the court earlier to allow the court to ensure that the Department made a referral for counseling." The record supports the court's finding that Mother did not raise the issue of counseling services either to her case managers or that court. By failing to raise the issue earlier, Mother deprived DCS and the court a chance to remedy any alleged error. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179-80 ¶ 16 (App. 2014) ("[A] parent's failure to assert legitimate complaints in the juvenile court about the adequacy of services needlessly injects uncertainty and potential delay into the proceedings, when important rights and interests are at stake and timeliness is critical."). Moreover, on this record, reasonable evidence supports the court's diligent efforts finding.

¶12 Mother asserts that the master's-level and domestic-violence counseling were "two critical services recommended by the Department's consulting expert," Dr. Silberman. Dr. Silberman did recommend "[c]ounseling with a Masters level or above [therapist] . . . on an every other week basis." Dr. Silberman's recommendation, however, was contingent upon Mother demonstrating six months of sobriety. He emphasized that sobriety should precede counseling, testifying that "the major [issue] is the methamphetamines, which makes people upset, angry, irritable, irrational." Yet Mother never demonstrated lasting sobriety. Mother was twice sober for two months during the dependency -- in July and August 2017 and again from March to May 2018 -- and while she completed substance-abuse treatment programs, she soon relapsed.

¶13 Nor did Mother fully engage in the individual counseling services that were provided. Though required to regularly attend substance abuse counseling at TERROS, Mother's participation was highly sporadic. Although Mother cites a lack of master's-level and domestic-violence counseling, she acknowledges that she received some individual counseling at TERROS through her substance-abuse treatment program. Indeed, TERROS records show Mother was required to engage in counseling at least once a month. The case manager ensured the TERROS service was always available to Mother, referring her each time the service closed. Yet, Mother's participation in TERROS was sporadic and she did not regularly take advantage of the counseling available to her. Despite its availability, Mother testified that she only met with her counselor "[l]ike

twice out of the whole" dependency. On this record, the superior court did not err in finding DCS made diligent efforts to provide Mother with appropriate reunification services.

**CONCLUSION**

¶14 The superior court's order terminating Mother's parental rights to A.S. and E.Q. is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA